**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| INSIGHT GLOBAL, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 18 C 00628 |
| v. | ) | |
| | ) | Hon. Virginia M. Kendall |
| KALEY BORCHARDT and KELLY | ) | |
| MITCHELL GROUP, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORDANDUM OPINION AND ORDER

Plaintiff Insight Global, LLC ("Insight") sued Defendants Kaley Borchardt ("Borchardt") and Kelly Mitchell Group, Inc. ("KMG") pursuant to the Defense Trade Secrets Act of 2016 (Counts I and II);[1] the Illinois Trade Secrets Act (Counts III and IV);[2] common law claims for breach of contract and breach of loyalty (Counts V through VIII); and for tortious interference with contract (Counts IX and X). (Dkt. No. 1.) Pending before the Court is Defendants' Motion to Dismiss Counts I and II (against Borchardt) and Counts IX and X (against KMG) pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. (Dkt. No. 24.) In the alternative the Defendants' motion seeks a more definite statement pursuant to Fed. R. Civ. P. 12(e). *Id*. For the following reasons the Court denies the motion. [24.]

## **BACKGROUND**[3]

Plaintiff Insight and Defendant KMG are a staffing services companies that operate in the fields of information technology, accounting, and finance and engineering. (Dkt. No. 1, ¶¶ 15, 67.) Prior to filing this suit, Insight employed Borchardt from 2014 through the time of her

---
[1] 18 U.S.C. §§ 1832, 1836.
[2] 765 ILCS 1065 §§ 1, 3-4.
[3] The Court construes well-pled facts in the complaint as true and draws reasonable inferences in the plaintiff's favor when reviewing a motion to dismiss for failure to state a claim. *See Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016).

1

departure on January 3, 2018, and provided her with a full range of training along with access to Insight's trade secrets. *Id*. ¶28. When Borchardt started working with Insight she had little-to-no experience in the staffing services industry. *Id*. During her time with Insight, Borchardt was introduced to trade secrets including but not limited to: (1) information about Insight's customer and client relationships such as customers' staffing placement history, current and long-term needs and preferences and pricing; (2) identities and personal contact information for hiring managers and vendor managers who are Insight's primary customer contacts, and who are difficult to identify from publically-available information; (3) proprietary information relating to pricing for various contract skills sets, margins, and thresholds for profitability; and (4) proprietary bidding procedures, recruiting methods and sales strategies for negotiating and winning business with contractors and clients. *Id*. ¶33.

On at least four separate occasions Borchardt signed an At-Will Employment Agreement that set forth the terms and conditions of her employment. *Id*. ¶ 42. Included in the terms of those agreements were various restrictive covenants including but not limited to a Trade Secrets Provision, a Non-Disclosure Provision, a Non-Competition Provision, a Non-Solicitation Provision, a Return of Materials Provision, a Notifications Provision, a Tolling Provision, and an Attorney's Fees Provision. *Id*. ¶¶ 43-53; Ex. A.[4]

In January 2018 the relationship between Borchardt and Insight came to an end, *id*. ¶ 5, and Insight soon after learned that she started working for a direct competitor, Defendant KMG, in the same region where she worked for Insight. *Id*. ¶ 55. Prior to and in expectation of her departure, Borchardt began collecting trade secrets and confidential information including but not limited to "(i) details regarding Insight Global clients …, (ii) information regarding active

---

[4] "A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes." *ADM Alliance Nutrition, Inc. v. SGA Pharm Lab, Inc.*, 877 F.3d 742, 745 (quoting Fed. R. Civ. P. 10(c)).

and former contractors …, and (iii) leads for prospective contractors and customers with whom Insight Global intended to conduct business." *Id*. ¶¶ 56, 57. Insight also alleges that she accessed Insight's computer system and either accessed, downloaded, or printed over 160 pages of "On the Job" reports and other information containing customer and contractor information, sales reports, and other sensitive materials. *Id*. ¶ 58, 59.

Insight sued after learning that Borchardt began working for KMG shortly after she resigned from Insight alleging federal and state trade secrets violations, and various contract-related common law violations against both Borchardt and KMG. (Dkt. No. 1.) She seeks both injunctive relief and actual damages. *Id*. Borchardt and KMG filed this current Motion to Dismiss, or in the alternative a more definite statement, pursuant to Rule 12(b)(6) and 12(e). (Dkt. No. 24.)

## **LEGAL STANDARD**

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" with the Court accepting well-pled facts as true and drawing reasonable inferences in favor of the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (1955)); *Roberts*, 817 F.3d at 564. Motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) challenge the viability of a complaint for failure to state a claim upon which relief may be granted. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). Under the federal notice pleading standards, "factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The absence of such a showing warrants dismissal of a complaint.

The Federal Rules permit a party to move for a more definite statement of a pleading that is "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P.

12(e); *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 849 (7th cir. 2017). Such a request by a party "is the right way to ask plaintiffs to lay out details that enable the defendants to respond intelligently and the court to handle the litigation effectively." *Id.* (citing *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 665 (7th Cir. 2007)).

## **DISCUSSION**

**1. The DTSA Claims**

The Defense of Trade Secrets Act of 2016 created a private right of action for the owner of a trade secret maintained in relation to a product or service used in interstate commerce that is misappropriated by another party in order to obtain injunctive relief and actual damages for any misappropriation, including but not limited to exemplary damages for willful and maliciously misappropriations. 18 U.S.C. § 1836(b)(1), (3)(A)-(B), (3)(C); *see also Signal Fin. Holdings LLC v. Looking Glass Fin. LLC*, 2018 WL 636769, at *3 (N.D. Ill. Jan. 31, 2018). The DTSA defines "misappropriation" as follows:

> (A) acquisition of a *trade secret* of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
> (B) *disclosure or use* of a trade secret of another without express or implied consent by a person who—
>
>> (i) used *improper* means to acquire knowledge of the trade secret;
>>
>> (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was—
>>
>>> (I) derived from or through a person who had used improper means to acquire the trade secret;
>>>
>>> (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or
>>>
>>> (III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; or

> > (iii) before a material change of the position of the person, knew or had reason to know that—
>
> > > (I) the trade secret was a trade secret; and
>
> > > (II) knowledge of the trade secret had been acquired by accident or mistake.

18 U.S.C. § 1839(5) (emphasis added); *see also Molon Motor and Coil Corp. v. Nidec Motor Corp.*, 2017 WL 1954531, at *3 (N.D. Ill. May 11, 2017). A "trade secret" is defined as:

> [A]ll forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—
>
> > (A) the owner thereof has taken reasonable measures to keep such information secret; and
>
> > (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. § 1839(3); *see also Mission Measurement Corp. v. Blackbaud, Inc.*, 216 F.Supp.3d 915, 920 (N.D. Ill. 2016).

The term "improper means" "(A) includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means; and (B) does not include reverse engineering, independent derivation, or any other lawful means of acquisition. 18 U.S.C. § 1839(6). Thus, one way for Insight to seek any of the available remedies provided by §1836(b)(3) (injunctive relief and/or damages) is to provide sufficient and plausible facts that (1) they are the owner of trade secrets; that (2) those trade secrets were misappropriated through either acquisition or the disclosure or use by another

5

person; and (3) the person who misappropriated the trade secretes acquired them through improper means.

As pled the complaint identifies information that qualifies as trade secrets. For example, Insight describes the process where they collect, analyze, catalogue, and utilize certain confidential client information to give the company a competitive advantage "in soliciting business" from outside business partners. (Dkt. No. 1, at ¶25.) They further collect "other confidential records and reports regarding its business relationships with customers and vendors" while creating "'client sheets' for each customer. *Id.* ¶ 19. It is reasonable at this stage of litigation for the Court to infer that this kind of information – created specifically to give Insight a competitive advantage – qualifies as trade secrets for the purpose of the DTSA as defined by §1839(3). While complaints must do more than allege broad areas of technology, they need not go into detail about the trade secrets in order to allege misappropriation. *See, e.g., Mission Measurement Corp.*, 216 F.Supp.3d. at 921. Furthermore, the Defendants do not specifically oppose the classification of Insight's materials as trade secrets.

Next, Insight must allege facts sufficient to prove or permit the Court to infer that Borchardt misappropriated its trade secrets, which again turns on whether the trade secrets were acquired (by Borchardt) through improper means; or that Borchardt engaged in "disclosure or use" of a trade secret without consent. *See* 18 U.S.C. § 1836(b)(1). First, Borchardt "had extensive access to valuable trade secrets" during her term of employment including the aforementioned customer and client relationship information, the identities of personal contact information for hiring managers and vendors, and various types of proprietary information specific to Insight's business operations. (Dkt. No. 1, at ¶¶ 33, 34.) Second, Insight also alleges that the At-Will Employment Agreement contained a definition of "trade secrets" and expressly

outlined what materials employees were prohibited from sharing such as certain kinds of information. *Id*., Ex. A at 3. Third, Insight specifically alleges the types of information misappropriated by Borchardt and even describes how some of that information was physically removed from the company premises by Borchardt prior to her departure. *Id*. ¶¶ 57, 58.

In short, even if the Court were to hold that the Plaintiff failed to allege any "disclosure or use" of trade secrets by Borchardt, they have certainly alleged that the Defendant "acquired" trade secrets through "improper means" by showing that her employment contract outlined what was considered trade secretes and prohibited their removal or continued use after her separation from the company and that Borchardt did exactly what the agreement prohibited. Alternatively, facts alleged in the Complaint of her immediate employment with a competitor doing the same type of work, when coupled with evidence that she took materials from the company prior to leaving, are sufficient to infer the possibility that Borchardt misappropriated trade secrets.

As for the Defendants' argument on the DTSA claim for injunctive relief, they are correct in that any such relief cannot "prevent a person from entering into an employment relationship, and that conditions placed on such employment shall be based on evidence of threatened misappropriation and not merely on the information the person knows." *See* 18 U.S.C. § 1836(b)(3)(A)(i)(I)-(II). However the Plaintiff has sufficiently pled a plausible misappropriation and that the trade secrets involved were more than information Borchardt knows. At this stage the claim for injunctive relief may proceed and the parties are welcome to dispute the precise tailoring of the injunctive relief at a later time. For these reasons, the DTSA Counts in the Complaint will not be dismissed.

### 2. The Tortious Interference Claims

In order to support a claim under Illinois law for tortious interference with a contract a plaintiff must show: (1) the existence of a valid and enforceable contract between the plaintiff and a third party; (2) the defendant's awareness of the contract; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages. *Healy v. Metro. Pier and Exposition Auth.*, 804 F.3d 836, 842 (7th Cir. 2015) (citing *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 676 (1989)). Defendant KMG, against which the tortious interference claims are brought against, argues that Insight fails to allege the second and third elements by failing to support "conclusory" allegations that KMG was aware of Borchardt's prior employment contract and also that KMG induced Borchardt to breach her employment agreement with Insight.

Insight's Complaint alleges that "KMG is prohibited from hiring [Borchardt] for such a position" based on the existence of her At-Will Employment Agreement that included the non-compete covenant. *Id.* ¶ 67. The Complaint continues that "KMG has instructed Borchardt that she does not need to comply with the contractual obligations she owes to insight Global under the Employment Agreement." *Id.* ¶68. Insight also claims that KMG was aware of Borchardt's use of Insight's trade secrets and willingly approved of her doing so in the course of her employment with them. *Id.* ¶ 69. Additionally, Insight alleges facts that KMG is a direct competitor in the industry and that KMG is using Insight's confidential business information and trade secrets in order to conduct its own business. This activity, they suggest, all started to occur shortly after Borchardt left Insight and started working for KMG. *Id.* ¶ 55.

Construing these statements as true, and considering the pleading standard Rule 8(a) as requiring "a short and plain statement of the claim showing the pleader is entitled to relief", it is plausible that the statements of fact in the Complaint permit the inference that KMG not only was aware of the prior employment relationship between Borchardt and Insight, but also – assuming facts in favor of Insight – that KMG advised Borchardt that she need not comply with the terms of the agreement. Thus, Insight has established a plausible claim for tortious interference with contract against KMG.

3. **More Definite Statement**

Rule 12(e) permits a party to move for a more definite statement if the pleading is so vague or ambiguous to the point that the defendant cannot reasonably prepare a response, and the District Court has brought discretion to grant or deny such a request. *See Hummel v. Wells Petroleum Co.*, 111 F.2d 883, 886 (7th Cir. 1940); *see also Meyer v. United Airlines, Inc.*, 2009 WL 367762, at *7 (N.D. Ill. 2009) (Kendall, J.). Given that the Court holds that the claims are sufficiently pled regarding Counts I, II, IX and X against Defendants there is no need for the Plaintiff to file a more definite statement pursuant to Rule 12(e). However, it appears the Defendants only filed an Answer in light of the need for a party file an Answer in conjunction with any potential dispositive Motion to Dismiss under the Mandatory Initial Discovery Pilot Program. (Dkt. No. 32, at 7.) Although the motion for a more definite statement [24] is denied, the Defendants shall have June 7, 2018 to file an Amended Answer.

## **CONCLUSION**

For these reasons, the Court denies Borchardt and KMG's Motion to Dismiss [24] Counts I and II for violations of the Defense of Trade Secrets Act against Borchardt and for Counts IX

and X for tortious interference of contract against KMG. The Defendants may file an Amended Answer on or before June 7, 2018.

_____
Hon, Virginia M. Kendall
United States District Judge

Date: May 17, 2018